The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable. The United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good afternoon. Please be seated. Ready to hear argument in our first case, Dickson v. Fidelity and Deposit Company of Maryland. Mr. Brown. Thank you, Your Honor. May I remove my mask? Yes, please. Thank you, Your Honors. Your Honors, and may it please the Court, I'm C. Thomas Brown. I represent Elliot Dickson. He's an individual who was hired by FEI Enterprises to do work on a project at the Pentagon. Since this was a case at the Pentagon, Mr. Dickson didn't have any opportunity to file a mechanics lien, so he's protected by the Miller Act. Your Honor, we come here on three issues from the district, the trial court below. This went out on a summary judgment, Your Honor. The issue number one is, did Mr. Dickson supply labor as that term is meant under the Miller Act? Number two, the Court found, and Your Honor, I submit the Court was just incorrect on this, but found that the main contract between the government and the contractor had been terminated on February. February had been terminated, concluded, I think is what the Court said, on January 31, before the last day on which Mr. Dickson did work. We'll talk about that. And the third issue is, Your Honor, even if we get to those two issues, was Mr. Dickson led to believe that he had more time than necessary to file his claim? And there's a letter that was written, Your Honor, it's in the Joint Appendix at 230, which clearly invites Mr. Dickson to go and redo his claim and submit his claim under timed circumstances where he was led to believe that the insurance companies would pay his claim if he did that. Mr. Brown, I've looked at every legal dictionary I can find, including blacks. Is there any definition of the word labor that does not include mental exertion? Well, Your Honor, I don't know if there is any definition. I know that the definitions, at least for this Court and for many of the courts out there, we have the Constructors' case and we have the Olson case, which was cited in the Constructors' case, and they talk about what labor means under the Act. And, Your Honor, I can get to that very quickly. And, Your Honor, on-site supervision is included in the term labor. There's no question about that. Moreover, in this case, Mr. Dickson did do a lot of physical labor on this job. He showed up every day. We have two affidavits from him. We have deposition testimony. He showed up every day. He hauled stuff to a dumpster. He cleaned up at the end of the site. He put up fences. He ground down concrete. He watered concrete. He assisted subcontractors. He was a hands-on guy. So what was the last act of labor he performed? February 8th, Your Honor, 2019. And what did he do then that qualifies as labor under the Miller Act? He was asked by the government to go to the site to conduct an inventory of what was on-site and what was already installed. In order to do that, he had to take a bunch of Schedule 40 pipe, I think he talks about. He had to actually move it from one spot to another. He had to count it. He had to measure what pipes were in the ground. And so, Your Honor, he did physical labor on that day that he worked at the specific request of the government. What case indicates that taking an inventory is labor under the Miller Act? Well, Your Honor, I don't think there's any case that addresses taking of an inventory. But remember, Your Honor, this is an on-site physical inventory. This isn't a thing where he sat back in an office and looked at a bunch of invoices and added things up. He went to the project site. He went through security. He got to the project site. And he started basically moving Schedule 40 pipe, moving wires, counting things up, identifying what was in the ground and what was left on the project. It was one of the things the government had asked him to do, which I think also bodes into the second argument, was this contract included at the time, which it wasn't. Your Honor, I think the cases that give you guidance on this issue are— Well, does the time of the termination of the contract have any impact here? If, for instance, we were to conclude that the February 8th inventory was not labor, what difference would the termination date of the contract make? Well, Your Honor, the argument of the trial court was, or at least the finding of the trial court was, if you supply labor after a contract's over, it's not labor under the Act. Here, this contract, that is, this was a separable contract. We had certain parts of the contract that were terminated and were concluded, certain parts that were not concluded. And the government said, we're going to revisit this. We will on February 1, 2019, revisit and let you know what we're going to do on the second part of the contract. So the fact that this contract is still— Do we have a copy of the contract? Your Honor, we have copies of the letters which cite what they're doing. We don't have a copy of the contract. The prime contract, Your Honor? No, we have a copy of the subcontract, but not the prime contract. And I guess the question I've got, the contract with the government, which maybe you can't answer this because it's not in the record, and maybe this is a question that we just can't answer on appeal, but was the inventory required under the contract? Yes, Your Honor, the inventory was required under the contract. How do I know that? I mean, I'm not doubting you as a person, right? But we rely on the record and information that was presented to the trial court. And I'm having a little trouble figuring out how I could determine if this issue was relevant, accepting Judge Agee's point, whether the post-completion inventory was required by the contract. Your Honor, if we look at the two letters that were sent by the government in this case, the first one terminating the contract, and then a second letter a couple of days later which un-terminates part of the contract, and in there they talk about actually the inventory. They talk about, Your Honor, FEI remains responsible in Apex 1 and 2. FEI is the general contractor. Until the work is finished, the worksite is cleaned up, all the requirements are submitted. FEI must proceed on Apex 1 and 2 by no later than December 31, 2018. And, Your Honor, I think in one of these letters they talk about the actual inventory as part of that work. I know that they request an inventory. I understand that. But what I didn't see, and I'm happy for you to point it out, is where it says that that was required by the contract, right? Because the Miller Act applies to labor provided under the contract. Well, Your Honor, we certainly know that the government said it was required under the contract, and that's in the email that was sent to Mr. Dixon. The email that was sent to Mr. Dixon, which is in the record,  under which he did the work. I'm just going to find it real quick, Your Honor. I can read the email. But the best place you've got for me to find that the contract required the inventory that was done is the email that you represent suggests that that's a contractual requirement. In other words, that it comes out of the contract itself, though we don't have it. It is, Your Honor, because it says that we want you to go do this inventory. It was required to be done before December 31. We need it to be done at this point in time. So it clearly referred back to an existing obligation under the contract for the general contractor to do this work that was now being picked up by the subcontractor, Mr. Dixon. So, Your Honor, perhaps during the five minutes when I'm sitting down, I'll see if I can find that for Your Honor and readdress that when I get back up. Assume that we don't find that this labor included mental exertion, but we do know he did some physical work. How would the district court parse out how much he's entitled to by way of compensation? Well, Your Honor, that's just an issue of proof. And that's not something that should be decided on summary judgment. But, Your Honor, I would suggest that once you trigger the Miller Act, the language, Your Honor, from all of these cases is very similar. And it says, however, the term doesn't include a professional. Excuse me. The term does include an architect or another professional. My client was an engineer who actually superintends the work as it is done on the job site. The constructor's case, Your Honor, said if the superintendent did some physical labor at the job or might have been called upon to do that physical labor. He clearly did physical labor, and he clearly was called upon to do physical labor. So, Your Honor, once you trigger labor under the act, the issue is one of proof. We were never able to put the proof on before the court because we went out on summary judgment. But clearly there are contract, there are daily memos that went to the file, and there is a huge record in this case underneath that we weren't able to put on. But in that daily record, Your Honor, it shows what was done on every day of the job. And Mr. Dixon can identify what he did on those days. And that ranges, Your Honor, from cutting off handrails, painting handrails, watering cement, grinding down cement, things of that nature. Now, Your Honor, even if you find that the matter is not timely, I would suggest that under the Humble Oil case, and Humble Oil is very similar to this case, Your Honor, very, very similar. Timing of it is this. Mr. Dixon files his claim with the bond company. Are you going to write to an estoppel argument? It's a waiver and estoppel argument. There's no question, Your Honor, that Humble Oil is a blueprint of this case. And, Your Honor, if this letter doesn't tell Mr. Dixon— Before you go there, let me ask you, if the court were to determine, for instance, that the February 8th, I believe, inventory was not labor within the Miller Act, would you agree that the complaint was not timely filed unless there was the application of estoppel? Well, Your Honor, the question is you're asking me to assume that he didn't do any labor on site. Correct. That's just an assumption. So I would suggest, Your Honor, he did do labor on the site that day. But if you find that he didn't do labor on site that day, then it's an estoppel issue. We know that he did work in January after this letter. It's in his affidavit. It's also in his testimony and his deposition, all of which are part of the record. And he would have filed within a year, but he thought the insurance company, because they told him, we will pay your—not we will pay your claim, we will adjust your claim once you refile it. In your statement, I mean, I get you just slipped up and said it, but doesn't that sort of reveal the trouble you've got with the estoppel argument? I understand if the letter said we will pay if you comply with these procedural requirements. You'd have, I think, quite a good estoppel argument. The problem is you just caught yourself in saying it doesn't say that. Well, actually, it kind of does. So let me just read from the letter itself. Let me start by saying it doesn't say that. It doesn't say that, but this is what it says here on Joint Appendix 231. It talks about notwithstanding the insufficiency of your proof of loss, and they talk about, you know, all the different things. It then says, please consider the above reference standard. Which letter are you reading from now? This is the Watt-Teter letter of January 14, 2020. This letter is over a year after the claim was initially filed with the bonding company, and just before the bonding company says the end of January is when the statute runs. This is the middle of January, sent by mail. He gets it maybe five days before this time period runs. He doesn't know anything about it. He doesn't have a lawyer at the time, unlike in Humble Oil where the guy did have a lawyer. Here it says resubmit your proof of claim in accordance with the guidelines, including removal of all hours, et cetera, et cetera. Last sentence, once the surety has received your revised proof of claim, it will conduct another review to determine any amounts recoverable under the payment bond. So he gets this and he says, look, they're going to tell me what's recoverable under the payment bond. Do you agree that if a claim is made outside of the statute of limitations that it is not recoverable upon? Well, the claim was made within the statute. There's no question about that. The question is whether the lawsuit's filed. Some of us might have a question about it. I know you think there's no question about it, but let's assume for a minute that just in a hypothetical case, except a hypothetical for a minute, that it was not filed within a statute of limitations. Do you agree that that claim would then not be recoverable upon? If the proof is not filed, that's right, Your Honor. But in this case, there's no question. The proof, and I can find it in the record for you. It hadn't been an issue in the case. Trial court didn't make it an issue. But the proof, the claim was initially filed in January of 2018, excuse me, 2019. The proof, the actual sign-sworn proof was provided in July of 2019. This letter comes in January 2020 after that and says, look, we don't like your proof. It acknowledges there's a timely proof. And it then says your proof's insufficient because it doesn't do this, this, and this. Redo your proof. Resubmit your proof. And we will conduct another review to determine the amounts recoverable under the bond. It says any amount recoverable. Any amount, yeah, any amount recoverable under the bond. And so, Your Honor, he clearly is believing. What about the concluding sentence, the surety reserves all rights? Well, Your Honor, I think if you go back and read the trial court's decision on this, what the trial court says, and I'm not sure where it comes from, he goes a little beyond that. But, Your Honor, when he says the surety reserves all rights. Wait a minute. But what do you say this last sentence of the January 14, 2020 letter means? I'm telling you, Your Honor, I think this is an issue for the trier of fact after Mr. Dixon takes the stand. What do you think it means? The surety reserves rights. It doesn't say reserves all rights. It just reserves, I mean, reserves all rights. The surety reserves all rights. It doesn't tell him what rights are being reserved. It doesn't say we reserve our right to deny your claim if you file your revised claim after a year from when you last did work. It doesn't really give him any information at all. Remember, we're dealing with a guy who's working on a project site, an individual. All he's looking for is his day in court to be paid on a project where he did the work and he supplied the labor for the Pentagon. Your Honor, I see my time is up. But you've got time on rebuttal. Okay, I do, Your Honor. Thank you. Thank you very much. Mr. Winkum, did I pronounce that correctly? Mr. Weinkam. Weinkam, all right, sir. It's pretty close, though. It caused some trouble. Go right ahead. Good afternoon, Your Honors, and may it please the Court. My name is Dominic Weinkam, appearing on behalf of Appellee Fidelity and Deposit Company of Maryland, the payment bond surety in this action. We're not here today to determine whether appellant is entitled to recover under a subcontract with the prime contractor, a subcontract for the performance of project management services on a nearly $12 million project at the Pentagon. Appellee has never maintained that the appellant should be left uncompensated to the extent that he was left unpaid by the prime contractor. However, appellant's remedy lies against the prime contractor and not the Miller Act payment bond surety. The protections of the Miller Act are not intended to be all-encompassing, and not all work done in connection with the construction project is compensable under the Miller Act. Well, the plaintiff did do some manual labor here from time to time, and there's a strain of Supreme Court and other cases that seem to indicate that some of that manual work mixed in with more cerebral work does qualify as labor. Yes, Your Honor, and, you know, appellant has relied heavily upon these cases. I submit that there has been a preceding line of cases, starting primarily with constructors v. Golf Insurance, that began to parse that distinction more carefully, and the more recent case from California. Can I sort of turn you to a case I don't think we've focused on, which is Banker's Surety of Cleveland v. Maxwell? So it's a Fourth Circuit case from 1915 that interprets the Heard Act, which is the predecessor to the Miller Act, and it seems to adopt, relying on a Supreme Court case called Cullen's from the 1880s, a position that's contrary to yours. And this is not a gotcha moment. If you don't know about it, you can just say you don't know about it, and that's fine. But I'm having a little trouble squaring that Fourth Circuit case law, which is controlling on us, or arguably controlling on us, with the argument that you're making that an on-site supervisor who does some manual labor, or there, in fact, I think they suggested might be called upon to do labor, qualifies. Yes, Your Honor. And so let me first start by saying that I am not intimately familiar with Maxwell. I have read it, and I have read the cases that Appellant primarily relies upon, which are in that vein. And we admit that, and we've attempted to use our briefing to do a more exacting analysis of the Appellant's affidavits and comparing them with the Gulf case and with the prime accountable case. I understand that, but what I'm saying is that under Maxwell, which is like the binding law here, defining what labor means in the Fourth Circuit, it's inconsistent with the argument you're making, at least as to what labor means, right? Because it says that supervision on site where no labor is done, but where you might have to do labor, qualifies as labor, quote, unquote, under the term. So, Your Honor, we would factually distinguish those cases, and in addition to previously mentioned, would reference the scope of work for the Appellant's contract and his position as the project manager. So he was a supervisor of supervisors, and his contract, he was not required to be on site. And so to the extent that he was on site performing this task, that would be, you know, he had the discretion to do that. And we submit that the district court aptly recognized that it creates a dangerous precedent to permit individuals to create their own Miller Act protections. And so the district court didn't look at it as closely as looking through his contractual obligations, but his contractual obligations were not to perform the types of services that he detailed in his affidavit. And just to circle back to the first point, when you do look at some of the types of services that are detailed in some of the newer lines of cases, you know, it's a matter of terminology sometimes, but you could just as easily say that the site coordination services that were rejected on a motion to dismiss in Gulf, you know, is that inconsistent with NACSA law in the previous cases, or can they be interpreted to say that there is a more nuanced definition of what types of services are intended to be protected by the Miller Act as it develops over time? And so we submit that this is a natural development of the labor standard. Well, as a follow-up to Judge Richardson's question, has this circuit ever excluded professionals from recovering under the Miller Act? No, Your Honor. And we are not seeking a categorical rejection of claimants based on their job title alone. We are attempting to do so in this case based upon the scope of contractual services and comparing and doing a detailed look at the types of services that he claimed to have performed that were incidental to his primary job as a project manager on this. Well, why don't you give us a synopsis of why the things he didn't do are not Miller Act labor? Yes, Your Honor. Sure. So we've done that in the briefing by taking his affidavits and the affidavits of Keith Forney and Steve Townsend. Right. And looking at the- Well, maybe you can give us a kind of a condensed version of that. Absolutely, Your Honor. So the types of labor that are contained in the affidavits and deposition testimony are, well, first of all, they're very general, and they include surveying, cleaning up the site, and moving materials around. And so, you know, I think that it's very difficult to say what is and what is not labor, you know, picking up a pen. What about if we had a crew, we had a construction crew, and on the construction crew one of the people assigned was the youngest guy on the team, and his job every day was to go around and clean up after everybody else. Would we call that guy having provided labor? I don't know. You'd have to look at it in the specific case, but- Well, I just described a specific case. That's what I'm trying to get at, right? So if a guy – his sole job was to do the things you just described, right? He cleaned up after the other workers, right? So he, like, took out their trash, and he swept the floor, and he, you know, picked up nails that got bent, and he cleaned up. Yes, Your Honor, and that's where we look to the scope of contractual obligations. Now, if you look at the appellant's contract, it's for project management services in accordance with the requirements of the prime contract. Now, if you had an individual whose sole job was to provide site cleanup services, I think we'd have a different case because his payment would be tied towards the performance of the service. He would be at risk of not fulfilling his contractual duties for failing to perform those services. Whereas the appellant here, there were times during the project where construction was- Whether he falls – I just want to make sure I understand. Your argument here is we would have to look at that employee's employment contract with the subcontractor and determine whether that contract required him to do cleanup or not. And we're looking at not the contract between the government and the contractor, but the worker's contract and what it required him to do. And if it didn't specify, then he's just out of luck. If it just said you show up and work as required. Your Honor, I believe that depending on what the contract language said, if the contract was silent as to the performance of those duties, then you would look to what the contract did say and whether those tasks were fundamental to the type of labor being claimed or whether they were incidental, did them at his own volition, or that sort of issue. And you would look towards what was he being paid for, how was payment being processed, and how was he receiving direction. In this case, appellant as the project manager had substantial discretion and employees beneath him that were site superintendents, safety officers, in order to direct and perform that. And so by stepping in and doing some of that himself, to the extent that he did, is he permitted to draw himself into the class of protected labor? And that is if you accept that performing – and you can look at the volume of performing the activity. Someone who is on site every day and is called upon to do that every day as part of their job versus their main job is running the project, and in the gaps they step in and sweep up a room. And so hopefully I've answered your question, but those are our positions and interpretations with regard to how they fit within the context of private case law. Can you address Judge Agee's, I think, first point, which was whether the work done on February 8th – sort of assume for a minute that you lost everything before that, but we just were asking the question about February 8th, and your colleague suggests that it was labor. I take primarily because he said he had to move pipe, Schedule 40 pipe. I don't know what Schedule 40 is, but I assume it's just pipe of some sort. Why would that not qualify as labor under your view of the case? Well, Your Honor, we rely on case law. And there's sort of two – there's two reasons why the February 8th work is not Miller Act labor. And first of all, just to directly address the question, is why in and of itself it's not Miller Act labor, is that cases from other jurisdictions have told us that – and that's referring here to the Northern District of Georgia Ricky Tittle case, where if I read you the facts from that case without identifying information, you would – you'd struggle to tell the difference between the two. In that case, a – But that's a district court case. It is, Your Honor. But that is – What's your best court of appeals case from somewhere on this point? Your Honor, I believe the East Coast electric or mechanical case was affirmed in a table decision and bears upon this point. The Mavis mechanical case was affirmed by the court circuit. It's unpublished. But it's after a subcontractor had one item of work left to complete, which was the installation of a valve, and left the project. Now, during the course of next year, they came back two different times. The first time they attended a meeting, and the second time the principal for the subcontractor made an attempt at installing this valve. And the court looked at both of those attempts and did not establish either one of them as qualifying as labor sufficient to establish a starting point for the Miller Act statute of limitations. And so, in addition to just looking at the labor itself, you know, the Ricky Tittle case, which is directly on point factually to this case, even though it is a district court case from another circuit. This is where the second argument relies on the status of the work at the time. Now, in this circuit, the standard, or the traditional standard, for determining whether a specific act qualifies for Miller Act purposes for the statute of limitations is whether it was part of the original contract work or whether it was warranty remediating defects. And so, you know, this case presents a little— you have to go a little bit further in this case because the appellant was not required— he was not responsible for the incorporation of any specific work into this project. And so, you know, he doesn't have any— there's no construction defects for him to correct or, you know, work for him specifically to complete as the project manager. Did WHS ever terminate the separable portions of the contract that it preserved action on? No, Your Honor.  Yes, Your Honor. So the consequence is that the contract naturally concluded, and the substantive work was completed by January 31, 2019. And so, you know, why would an inventory be being conducted if there was still work going on? This is part of the closing out of the natural conclusion of the project, which that's not the end point for— As of December 28, 2018, that last portion of the work, there was 0.1 percent of work that was left to be done, and Forty Enterprises completed that physical installation of work by January 31, 2019, the extended deadline. And so there was no termination because that part of the work was done, and Forty Enterprises was off the job. Do you agree with your colleague that the—what I'll call the closing inventory was required under the contract? I mean, we don't have the contract, which is a little hard, but he represents that it was required by the contract. Do you agree with that, that the contract required a closing—the contract itself required a closing inventory? I disagree. Tell me why and tell me what in the record— Since we don't have the contract itself, which is a little frustrating, but since we don't have the contract, why should I believe that it was not required by the contract itself? Yes, Your Honor. So if you—and co-counsel may be preparing these emails, but if you look at those emails between Forty Enterprises, the appellant, and the government during that period from January into February 2019, the meaning of those emails becomes apparent. The government was requesting this inventory as a—in order to make this—to reconcile the materials and make final payment. It was for the benefit and for the government to issue payment to Forty Enterprises as they were leaving the job. And so it was not for the government's benefit. It was for—the government was belaboring Forty Enterprises to conduct this inventory so that they could have everything just tied up at the end. And so, unfortunately, like I said, we don't have the prime contract before us, but there's—the conducting of a materials inventory is not something that you're required to do when a contract naturally completes. It was for the purposes of—the appellee stepped in and performed the terminated portion of the contract, so it was determining what was left for both the terminated and non-terminated portions just to get a status of the work. And it would not have occurred but for the fact that the other portions had been terminated. If the non-terminated portions had just been completed January 31, 2019, there would be no reason to inventory the materials. The work would have continued on the terminated portion if that portion had not been terminated. So it's a function of determination and Forty Enterprises no longer being on the job. Just to make sure I understand that, you wouldn't need a closing inventory because they would have moved that pipe or whatever it is to the next apex? To the next apex. It would be—the work would be continuing. That's correct, Your Honor. But because Forty Enterprises was terminated in December 21, 2018, once the work on the non-terminated apex was done, it was time to take note of the status of the work, which was in a state of flux owing to the termination. So just to briefly touch upon the estoppel arguments. You know, appellants rely almost— On the issue of the application of statute of limitations, if we were to assume that Mr. Dixon performed Miller Act labor on February the 8th, would his complaint have been timely? Yes, Your Honor. The Miller Act statute of limitations is one year from the date of last performing labor. And I'll add one caveat, of course. So if you determine that this is qualifying Miller Act labor, that determination should take into account the nature of the work, and the nature of the work should take into context the nature of the contract as a whole, which is the status of the termination. So that's my caveat, but my answer is yes. If all of those conditions are met and this is qualifying Miller Act labor, then the suit was filed February 5, 2020, which is within one year. Okay. Well, if we assume, on the other hand, that February the 8th was not Miller Act labor, now tell us about the estoppel argument. Yes, Your Honor. So appellants rely on humble oil, which is—it establishes standards that are just not met in this case. The hallmarks of the humble oil estoppel are a promise to pay and protracted negotiations, a lack of a reservation of rights. And so we have several cases from courts within this circuit where we have much more similar facts, such as Datastaff and that East Coast Machinery case, again, where in Datastaff there were written letters where the surety actually incorrectly informed the claimant that they were not a proper claimant of the bond, which the claimant then relied upon. And the surety informed them, informed the claimant that we're open to considering other information. Now, those types of statements were not interpreted to be promises to pay. And that's very, very similar to what we have here, where the surety is open to reconsidering its decision, its rejection of the claim, upon receipt of that proof that would allow for payment. And just like in those cases here, we have not only the reservation of rights that's contained in the January 14, 2020 letter, we also have in June of 2019 the initial request by the appellee for the proof of claim, which contained even a more detailed reservation of rights that— and there was nothing that the appellant should have reasonably relied upon. All right. Anything else you want to tell us? Thank you, Your Honors. All right. Thank you very much. Mr. Brown? Let me start, Justice Richardson, with your question, and was it required by the contract. If we go to 141 of the joint appendix, that is the second page of the first letter that was written by the government, on December 20, 2018. And they go through the requirements of the contract, and it then says, FEI remains responsible for Apex 1 and 2 until the work is finished, the worksite is cleaned up, and all required deliverables are submitted. FEI must proceed in good faith to complete Apex 1 and 2 by no later than December 31, 2018. That was later changed. FEI must provide an inventory of all materials on-site and at any off-site location as soon as practicable but no later than December 31, 2018. Now, that date was later extended by the government in the email which is found in Joint Appendix 305. The email—it's in a bunch of different places in the record, but this is within the affidavit of Mr. Dixon, where the email says that the subject is final request for materials inventory, bond number, blah, blah, blah, blah, blah. And it says, Elliot, please submit the materials inventory no later than 5 p.m., Monday morning, 11 February 2019. So they pushed it back to February 11, which is the day he got this. He goes out to the site, and it says the materials inventory was due on December 31, 2018. This is your final notice in this map. But so just so that I understand, I mean, so I read the first letter as saying you've got to do the contractual deliverables. Right. And we're also asking for materials inventory, right? Correct. And it goes through and says we're making a request for materials inventory, not a contractual demand, but a request, right? And it says we're asking for please do this. I'm not saying it has to be read as an extra contractual request, but it could be read as either a contractual demand or an extra contractual request. Your Honor, I don't think it's an extra contractual request when the government tells FEI you must provide an inventory in their letter. And that's a must. It's a requirement. The way I read it, when the government tells me you must do this and it's referenced this contract, it's something required by the contract. And in the email, when they say submit the inventory no later than et cetera, the materials inventory was due on 31 December. Your Honor, I don't think it's a request. They're saying you had an obligation to give it to us. We demanded that you give it to us. You didn't do it by then. We're going to give you a little bit more time. And what Schedule 40 pipe, Your Honor, is, I didn't know about it either. It doesn't matter. I don't care. It's big heavy pipes, the plastic pipe that goes underground. So, Your Honor, this is something that was submitted under the contract. The government was asking Mr. Dixon go out there and do this. And, Your Honor, the question was, and I'll get to data staff in a second, the constructors case, Your Honor, which is 8th Circuit. But it's a good case. And that case, Your Honor, does address this issue. And it says, quote, however, only certain professional supervisory work is covered by the Miller Act, namely skilled professional work involving actual superintending, supervision, or inspection at the job site. It cites Buttonhead at 535F Supp. Accordingly, plaintiff can only recover on the payment bond to the extent he performed on-site services. And, Your Honor, he was performing on-site services on the date that he went out to do the materials inventory. And I would submit that, reading his affidavit, it is physical labor. I mean, this is not something I could send my wife out to go do. She couldn't schlep around a bunch of Schedule 40 pipe and that sort of thing. So, Your Honor, I would suggest that that's it. On the issue on data staff, Your Honor, data staff is actually, it's a good case to contrast with this case. Because in data staff, what the court noted was it said data staff was not lulled into a false sense of security that its claim would be paid instead because the subcontractor's claim was flatly denied by the security. This is not a flat denial. This letter doesn't say your claim is flatly denied. What this letter says is you resubmit your claim, knowing that he's only going to have like five days to do this. After they sat on his claim for a year, they sent him this letter and they say, resubmit your claim. And they know it's going to take more than five days to get this done. Whether it's intentional or not doesn't matter. Under humble oil, it's just, it's in Mr. Dixon's mind. I'll ask you one final question as your time runs out. The district court described the February 8th materials inventory as a, quote, clerical task. Is that, and I understand you disagree with that, right? I'm not asking that. Is that a factual finding by the district court and do we review that for clearer? I think you review that de novo, Your Honor, because he's describing what, you know, there's testimony about what the inventory was, what was done, what wasn't done. You may, I get you disagree with it, but why would I review that de novo? Because we're on summary judgment, Your Honor. The judge, the trial judge didn't see any testimony from anybody. He looked at the same thing that Your Honor has in the record, affidavits, deposition testimony. Your Honor, it is a review de novo on a Miller Act case. And I just submit in this case, Your Honor, Mr. Dixon should be paid under the Miller Act. That was the purpose of it. Thank you very much for your time. Thank you, Mr. Brown. We appreciate the argument of both counsel. As you know, our custom is to come down in the Fourth Circuit and greet counsel. But we'll have to greet you from the bench. We're still under restriction, at least for this term of court. So we hope when you come back in the future, we'll be able to come down and greet you in person. Your Honor, I argued one of these just about a month ago by video, Zoom. This is way better. We agree. It just really is. Thank you, Your Honor. Thank you all.
judges: G. Steven Agee, Julius N. Richardson, Henry F. Floyd